Tami M. STEWART

v.

ASSOCIATES CONSUMER DISCOUNT COMPANY, Associates Insurance Company and Associates Financial Services Company, Inc.

No. 97–CV–4678.

United States District Court, E.D. Pennsylvania.

April 15, 1998.

Douglas Abrahams, Kohn, Swift & Graf, P.C., Philadelphia, PA, for Plaintiff.

Robert A. Nicholas, Sean M. Halpin, Reed Smith Shaw & McClay, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This class action lawsuit is presently before the Court for disposition of the Rule 12(b)(6) motion of the Defendants to dismiss Counts VI and VII of Plaintiff's complaint for failure to state claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* For the reasons which follow, defendants' motion is denied.

### History of the Case

Plaintiff is Tami Stewart, a resident of Schuylkill County, Pennsylvania, who in October, 1994, owed approximately $23,000 on her home mortgage with Schuylkill Savings and Loan Association, and another $23,000 in installment credit obligations to various other lenders, including $1,000 to defendant Associates Consumer Discount Company ("Discount"). At about this same time, plaintiff was looking to refinance her mortgage and consolidate her other debts. Plaintiff avers that she was contacted by defendant Discount and repeatedly told that Discount would refinance its loan and all of plaintiff's other debts at a rate that was better than any rate which could be obtained from a competing lender and that its closing costs were lower than those of any of its competitors. Plaintiff subsequently entered into an agreement with Discount to refinance the first mortgage on her home in Schuylkill Haven, PA, together with her other debts at a rate of 9.8% per year for ten years with resulting payments of approximately $421 per month.

Unbeknownst to plaintiff and despite Discount's repeated assurances that the proceeds from the refinancing would be used to pay off her existing mortgage to Schuylkill Savings and her other outstanding debts, the loan on which she closed with Discount on November 30, 1994, was classified as a consumer loan with an interest rate of 15.08% and was not used to retire the loan to Schuylkill Savings and Loan. Instead, Discount secured its loan to plaintiff with a second mortgage lien against her residence. Plaintiff further avers that the principal balance of her loan was determined solely by Discount and was in excess of the amount required to repay plaintiff's home improvement, motor vehicle and other consumer credit debts but not sufficient to retire those obligations along with her existing mortgage. However, when plaintiff attempted to question Discount about these facts and the higher rate of interest, she was told only that the company computed interest in a different manner for principal and finance charges which caused a higher interest rate to be shown and that it would be sending a check directly to Schuyl-

kill Savings and Loan subsequent to closing because of the large amount and nature of the loan.

Plaintiff alleges that these lending practices and Defendant's requirement that plaintiff purchase "Lender's Security Insurance" and $100,000 of "Credit Life Insurance" through its affiliate, Associates Insurance Company, which are in reality nothing more than additional finance charges are unlawful, fraudulent and part of ongoing racketeering activity and conspiracy between the defendants. As a result of defendants' conduct, plaintiff avers that she has now incurred additional debt and financial obligations which she cannot pay. Ms. Stewart seeks actual, statutory, treble and punitive damages on behalf of herself and all other persons similarly situated under theories of Fraud and Deceit (Count I), Unlawful · Finance Charges in violation of 41 P.S. § 101, et seq. (Count II), Unjust Enrichment (Count III), Conspiracy (Count IV), Breach of Warranty (Count V), Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §. 1962(c) and (d) (Counts VI and VII), Violation of the Truth in Lending Act, 15 U.S.C. § 1600, *et seq.* (Count VIII) and for Violations of the Pennsylvania Unfair Trade Practices .and Consumer Protection Law, 73 P.S. § 201–2, *et seq.* (Count X)(sic).

Defendants move to dismiss Counts VI and VII which allege claims under RICO on the grounds that the complaint fails to allege, *inter alia*, (1) a RICO enterprise which is separate and distinct from the RICO persons, (2) that the defendants acted through the alleged enterprise or (3) that the defendants committed two or more predicate acts of racketeering activity.

### Standards Governing Rule 12(b)(6) Motions

The rules governing the pleading of cases in the district courts are clear. Under Fed. R.Civ.P. 8(a),

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the

court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded."

It is equally clear that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) or through a motion for a more definite statement under Rule 12(e). In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.,* 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo,* 848 F.2d 398,

401 (3rd Cir.1988); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3rd Cir.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

### *Discussion*

The right to institute a civil lawsuit and recover treble damages under RICO is conferred under 18 U.S.C. § 1964(c) upon "any person injured in his business or property by reason of a violation of section 1962." There are four options for proceeding under § 1962: Subsection (a) makes it unlawful for "any person who has received any income directly or indirectly from a pattern of racketeering activity ... to use or invest that income" in the acquisition, establishment or operation of any enterprise affecting or engaged in interstate or foreign commerce.[1] Section 1962(b) prohibits "any person through a pattern of racketeering activity or through collection of an unlawful debt" from acquiring or maintaining any interest in or control of any enterprise "engaged in or affecting interstate or foreign commerce." Under Section 1962(c), it is not permissible for "any person employed by or associated with any enterprise [affecting interstate or foreign commerce] to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." Finally, Section 1962(d) states that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." *See, e.g.: U.S. v. Console,* 13 F.3d 641, 650 (3rd Cir.1993).

Although as a general rule, the RICO statute is to be read broadly, the

---

1. Under 18 U.S.C. § 1961,

   (1) "Racketeering activity means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: .... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ...."

   (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

   (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

   (5) "pattern of racketeering activity:" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

pleading requirements naturally differ depending upon which subsection of § 1962 has been invoked to obtain relief. *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497–498, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). To state a cause of action under Section 1962(c), a plaintiff must allege: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285; *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3rd Cir.1989). To be held liable under § 1962(c), then, the plaintiff must first plead and subsequently prove that the "persons" charged with violating § 1962(c) are separate and distinct from the "enterprise." *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 72 (3rd Cir.1994); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 300 (3rd Cir.1991) citing *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 633–34 (3rd Cir.1984). *See Also: Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3rd Cir.1993).

■ A § 1962(c) enterprise "includes any individual, partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity." *See: U.S. v. Console, supra*, 13 F.3d at 650; 18 U.S.C. § 1961(4). While it has been recognized that a corporation "must always act through its employees and agents and any corporate act will be accomplished through an 'association' of these individuals and entities," a corporation is also an entity legally distinct from its officers or employees. Thus, alleging conduct by officers or employees who operate or manage a corporate enterprise will satisfy the pleading requirements for a § 1962(c) claim if recovery is sought from the officers as persons operating and managing the corporation as an enterprise through a pattern of racketeering activity. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3rd Cir.1995). In like fashion, a corporation may also be held liable under

§ 1962(c) if *it* engages in another distinct "enterprise" as a "person" since only "persons" are liable for violating § 1962(c). *Id., citing Petro–Tech, Inc. v. Western Co.*, 824 F.2d 1349, 1358 (3rd Cir.1987). *See Also: Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 1995 WL 455969 *5 (E.D.Pa.1995). Stated otherwise, a defendant corporation identified as the person cannot also be the enterprise. *See: Jaguar Cars*, 46 F.3d at 268; *Brannon v. Boatmen's Bancshares, Inc.*, 952 F.Supp. 1478, 1485 (W.D.Okla.1997); *Schuylkill Skyport Inn, Inc. v. Rich*, 1996 WL 502280 *31 (E.D.Pa.1996); *Bieber v. Sovereign Bank*, 1996 WL 278813 *8 (E.D.Pa. 1996).

■ To plead a "pattern of racketeering activity," a plaintiff must aver not only that the defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3rd Cir.1991). Racketeering acts are said to be related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Schroeder v. Acceleration Life Insurance Co.*, 972 F.2d 41, 46 (3rd Cir.1992), citing *H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901.

■ Continuity, on the other hand, has been said to be both a closed and open-ended concept referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition. *H.J., Inc.*, 492 U.S. at 241–242, 109 S.Ct. at 2902. Thus, a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time or by demonstrating that a threat of continuing criminal activity exists. *Id.; Hindes v. Castle*, 937 F.2d 868, 872 (3rd Cir.1991).

Whether the predicate acts constitute a threat of continued racketeering activity depends on the specific facts of each case. *Tabas v. Tabas,* 47 F.3d 1280, 1295 (3rd Cir.1995). While predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement, open-ended continuity may be satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business or of conducting or participating in an ongoing and legitimate RICO enterprise. *H.J., Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902; *Tabas,* at 1295. In determining whether a pattern of racketeering activity has been established in a given case, it is appropriate to consider: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *Tabas,* at 1292; *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3rd Cir.1987). *See Also: Bieber v. Sovereign Bank, supra,* at *7.

Finally, "to conduct or participate directly or indirectly in the conduct of an enterprise's affairs," a defendant must have had some part in directing those affairs, i.e., must have participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young,* 507 U.S. 170, 180, 185, 113 S.Ct. 1163, 1170, 1173, 122 L.Ed.2d 525 (1993).

To plead a claim under § 1962(d), a plaintiff must allege that: (1) there was an agreement to commit the predicate acts of fraud, and (2) defendants had knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate §§ 1962(a), (b) or (c). *Martin v. Brown,* 758 F.Supp. 313, 319 (W.D.Pa.1990). Any claim under § 1962(d) based on a conspiracy to violate the other subsections of Section 1962 necessarily must fail if the substantive claims are themselves deficient. *Jiffy Lube International v. Jiffy Lube of Pennsylvania,* 848 F.Supp. 569, 583 (E.D.Pa.1994), citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3rd Cir.1993).

In this case, we find that plaintiff has sufficiently pled the elements needed to state claims under Sections 1962(c) and (d) of RICO to withstand defendants' 12(b)(6) motion. While at first blush, Count VI appears to run afoul of the "separateness and distinctiveness" requirement in that all three defendants are alleged to be both persons and a racketeering enterprise, upon closer examination, we find that no one corporate defendant is alleged to be both *the* enterprise and a person. Specifically, the organization of the Associates "enterprise" is alleged to be such that Defendant Financial or its Directors and/or officers control the activities of the other two "by giving instructions to Discount and Insurance to prepare false and deceptive procedures in order to advertise, promote, execute and insure such loans, and to use deceptive loan documentation." (Complaint ¶s 90, 95). Defendant Discount is alleged to have associated with the Associates enterprise "by contracting with and working with Insurance and Financial to promote the issuance of unconscionable loans by employing false and deceptive procedures to advertise, promote, execute and insure such loans and by using deceptive loan documentation." (Complaint, ¶ 96). Defendant Insurance, in turn, is alleged to have associated with the Associates enterprise "by contracting with and working with Discount and Financial to promote the unconscionable loans by issuing insurance to Discount in furtherance of the unconscionable loan scheme." (Complaint, ¶ 97). In this manner then, the complaint alleges that each corporation is only a portion of the enterprise, being one member of an association in fact each of which plays a distinct role in the overall pattern of racketeering activity. The complaint does not allege that each corporate defendant is in itself both person and enterprise. *See: Schuylkill Skyport v. Rich, supra,* 1996 WL 502280 at *31 and *Brokerage Concepts v. U.S. Healthcare, Inc., supra,* 1995 WL 455969 at *5. We therefore find that a sufficient distinction has been pled to differentiate between the RICO

"person" and the RICO "enterprise" under *Jaguar Cars* and that all three defendants participated in the operation and management of the enterprise itself. *See Also: Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3rd Cir.1993).

██ We likewise find that plaintiff has adequately alleged the requisite pattern of racketeering acts to overcome defendants' motion for dismissal. Again, paragraphs 90–98 aver that the Associates enterprise is and has for a substantial period of time been in the business of soliciting, promoting and issuing unconscionable loans by, *inter alia*, misrepresenting the terms and conditions of those loans and placing false advertising through the U.S. mails and interstate wires. These allegations, when read in the context of the complaint as a whole and in light of the liberal pleading requirements of the Federal Rules of Civil Procedure are sufficient to allow plaintiff's claim under § 1962(c) to proceed at least through the discovery process.

██ Finally, inasmuch as Count VII avers that defendants Discount, Financial and Insurance agreed and conspired to violate § 1962(c), we conclude that this Count is likewise adequate to state a claim upon which relief may be granted under Section 1962(d). For these reasons, defendants' motion to dismiss is denied.